**John A. WOLFNER, et al.,**
**Plaintiffs-Respondents,**

v.

**Paul MILLER, et al.,**
**Defendants-Appellants,**

v.

**Ronald O'CONNELL, et al., Counterclaim Defendants-Respondents.**

No. 50497.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 3, 1986.

John G. Young, Jr., Ziercher, Hocker, Human, Michelfelder & Jones, Clayton, for plaintiffs-respondents.

Donald L. Schmidt, Ferguson, for counterclaim defendants-respondents.

Hazelwood, Barklage & Barklage, P.C., Keith W. Hazelwood, St. Charles, for defendants-appellants.

GARY M. GAERTNER, Judge.

Defendants appeal from the trial court's judgment granting plaintiff's petition for injunctive relief and denying defendants' counterclaim for a declaratory judgment. On appeal, defendants argue: (1) that the trial court's judgment is a final judgment for purposes of appeal; and (2) that the trial court erred in rendering its decision because it misapplied the controlling legal principles. We find that the trial court's judgment is appealable, but find no error in that judgment. Affirmed.

Plaintiffs in this action include the trustees of the Wilderness Subdivision Plat One in St. Charles County, Missouri, and the owners of various lots within that subdivision. The Wilderness Subdivision did not exist prior to 1977. In July or August of 1977, the trustees submitted a preliminary plat to the St. Charles County Planning and Zoning Commission for approval. Included with the plat was a "Trust Agreement and Indenture of Restrictions" applicable to the plat.

On August 31, 1977, defendants entered into a real estate sale contract for the purchase of lot one in the Wilderness Subdivision Plat One. The defendants paid $100 as an earnest money deposit at that time, and agreed to pay the balance of the $10,000 purchase price on the date of closing. The agreement provided that the contract was subject to "[t]he acceptance by St. Charles County of the final plat of Wilderness Plat #1, and the recording of same." The evidence presented at trial conflicted as to whether defendants had notice of the proposed restrictions prior to the signing of the sale contract. Defendants testified they had no such notice, but plaintiff John Wolfner, Sr., testified that he told defendant Jean Miller about the restrictions prior to August 31, 1977.

On October 31, 1977, the final plat of the Wilderness Subdivision Plat One, together with the Trust Agreement and Indenture of Restrictions, was recorded in the plat books of the St. Charles County Records. On November 25, 1977, closing occurred on the contract for the sale of lot one. Defendants paid the balance of the purchase price at that time, and received a general warranty deed to the property.

After the closing on lot one, defendants expanded their farming operations onto that lot.[1] On February 23, 1981, plaintiffs brought this action to enjoin defendants from continuing farming operations on lot

---

1. Defendants had since 1970 conducted farming operations on a three-acre tract of land adjacent to lot one. That tract is not part of the subdivision.

one.[2] In their petition, plaintiffs alleged that such operations violated the Trust Agreement and Indenture of Restrictions recorded with the plat. Defendants counterclaimed on four counts: first, for a declaratory judgment declaring the restrictions inapplicable to lot one; second, for breach of warranties contained in the general warranty deed; third, for alleged misrepresentations and omissions made by plaintiff Margaret Wolfner to defendants in connection with the sale of lot one; and fourth, for an injunction against John Wolfner, Jr., regarding an alleged private nuisance created by drainage from a septic tank on his property. The trial court severed plaintiffs' petition for an injunction and defendants' request for a declaratory judgment from all other claims and held a trial on the two severed claims. After a bench trial, the court issued a judgment and decree finding the restrictions valid and applicable to lot one, and enjoining defendants from continuing farming operations on that lot. Defendants appeal from that judgment and decree.

In their first point on appeal, defendants argue that the judgment and decree entered by the trial court is a final judgment for purposes of appeal. Plaintiffs do not contest this point.

■ A trial court may sever certain claims and order a separate trial on those claims if a separate trial will promote convenience, avoidance of prejudice, or expedition and economy. Rule 66.02. *See Shell v. Shell,* 605 S.W.2d 185, 190 (Mo.App. 1980). The judgment rendered in a partial disposition is appealable if the claims disposed of constitute an independent and distinct "judicial unit," i.e., a judgment which terminates the action with respect to the claims adjudged. Rule 81.06. *See Erslon v. Cusumano,* 691 S.W.2d 310, 312 (Mo. App.1985).

■ In the instant case, the injunction and declaratory judgment claims that the trial court severed and tried separately constitute a "judicial unit." Those claims involve the distinct issue of the validity and enforceability of the subdivision restrictions, and thus they are wholly independent of the remaining claims. The separate trial served, therefore, to promote judicial convenience and economy. Accordingly, we hold that the trial court's judgment and decree is appealable.

In their second point on appeal, defendants argue that the trial court misapplied the law in holding that the restrictions contained in the Trust Agreement and Indenture of Restrictions were applicable to lot one. Defendants rely principally upon the decision in *Henson v. Wagner,* 642 S.W.2d 357 (Mo.App.1982). We need not recite the facts of that case. In short, the *Henson* court held that a subsequent bona fide purchaser, who purchases without notice of a prior unrecorded conveyance, takes free of the unrecorded interest, even if the prior interest is thereafter recorded before the subsequent purchaser records. Defendants contend that they purchased lot one on August 31, 1977, when the sale contract was signed, and that they had no actual or constructive notice at that time of the subdivision restrictions, which constituted a prior unrecorded interest in the property. Defendants thus argue that as bona fide purchasers they took lot one free of the restrictions, despite the fact that the restrictions were recorded before defendants recorded their general warranty deed to lot one.

■ Defendants' argument fails, however, because they did not pay valuable consideration when they contracted to purchase lot one on August 31, 1977. The *Henson* court clearly set forth the rule in Missouri that "an unrecorded conveyance is void only as to any subsequent purchaser or mortgagee *for valuable consideration* and without 'actual notice.'" *Henson,* 642 S.W.2d at 361 (emphasis added). The payment of valuable consideration requires

---

**2.** Plaintiffs' petition also contained two other counts, but each of them was dismissed prior to trial.

that "[t]he purchase price, or a substantial part of it, must be paid, and the purchaser must have been put into position where he could not be protected or made whole." *Id.* at 362, *quoting Benson v. Watkins,* 313 Mo. 426, 435, 285 S.W. 407, 408 (1926). *See also Doane Agricultural Service, Inc. v. Neelyville Grain Co., Inc.,* 516 S.W.2d 788, 791 (Mo.App.1974). In *Benson v. Watkins,* the court held that payment of $300 earnest money on a $5,700 contract price did not constitute valuable consideration. 285 S.W. at 409. In *Henson,* on the other hand, the court held that the Hensons were bona fide purchasers because they had paid a substantial portion of the purchase price and spent over $80,000 constructing a home on the property before they received notice of the prior unrecorded interest. 642 S.W.2d at 362. The Hensons were thus in a position where they could not have been made whole by return of the money paid on the contract.

In the instant case, defendants paid earnest money of only $100, or one percent of the purchase price, when the contract was signed on August 31, 1977. Defendants did not make any further payments or move onto lot one in any manner before November 25, 1977, when the sale was closed. By that time, defendants had at least constructive notice of the restrictions, given that the restrictions had been recorded on October 31, 1977. The record thus indicates that defendants had notice of the prior interest in lot one before they paid a substantial portion of the purchase price and before they were put into a position where they could not have been protected or made whole. "It is a settled rule in equity that a purchaser without notice, to be entitled to protection, must not only be so at the time of the contract or conveyance, but must be so at the time of the payment of the purchase money." *Benson,* 285 S.W. at 409, *quoting Wormley v. Wormley,* 21 U.S. (8 Wheat) 421, 5 L.Ed. 651, 658 (1823). Defendants were not without notice when they paid valuable consideration for lot one on November 25, 1977, and thus they are not entitled to protection from the subdivision restrictions. We hold,

therefore, that the rule set forth in *Henson* is inapplicable under the facts of the instant case, and that the trial court properly found the restrictions applicable to lot one.

We note also that plaintiff John Wolfner, Sr., testified by deposition that he informed defendant Jean Miller prior to August 31, 1977, that deed restrictions would be recorded with the subdivision plat. There was, therefore, substantial evidence in the record to support a conclusion that defendants had actual notice of the restrictions prior to signing the sale contract. Accordingly, this point is denied.

The judgment is affirmed.

KAROHL, P.J., and SIMON, J., concur.